IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville November 2, 2010

**STATE OF TENNESSEE v. MICHAEL DESHAWN SMITH**

**Appeal from the Fayette County Circuit Court**
**No. 6229       J. Weber McCraw, Judge**

**No. W2010-00344-CCA-R3-CD  - Filed April 18, 2011**

The Defendant, Michael Deshawn Smith, pled guilty to second degree murder, a Class A felony. See T.C.A. § 39-13-210 (2010). He was sentenced as a Range I, standard offender to twenty-three years' confinement. On appeal, he contends that the trial court imposed an excessive sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Gary F. Antrican, District Public Defender, and Kari I. Weber, Assistant Public Defender, for the appellant, Michael Deshawn Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; D. Michael Dunavant, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to an altercation in which the Defendant shot Norquell McNeal. The record on appeal does not contain a transcript of the guilty plea hearing, but the record reflects that the Defendant entered his guilty plea on December 8, 2009.

At the sentencing hearing, the State introduced the presentence report. The report states that on March 4, 2009, the Defendant and the victim were riding in a car and began arguing. The victim took out a pistol, and the two men fought to gain control of the gun. The Defendant obtained the gun, stepped out of the car, and shot the victim multiple times.

Susan Haney-Reagan testified that she prepared the Defendant's presence report. She agreed she obtained documents from the Shelby County crime information system reflecting that the Defendant had pending charges in Shelby County. She said the documents showed that a $250 bond was placed on one of the charges and a $2000 bond was placed on another charge. She said the documents stated "final forfeiture" next to the bond amounts, meaning the Defendant posted bond and then failed to appear in court.

The State introduced a document mailed from a district court in Detroit, Michigan, reflecting that the Defendant was charged with disorderly conduct on January 12, 2008. The document stated that the Defendant failed to appear or respond to the charge and that a warrant had been issued for his arrest. Ms. Haney-Reagan testified that a search of the National Crime Information Center (NCIC) computer system indicated the Defendant was charged with unlawful possession of a weapon on January 12, 2008, not disorderly conduct, and that she listed the weapons offense in the presence report. She said she did not know if the weapons charge was entered correctly in the NCIC system.

Ms. Haney-Reagan testified that she met with the victim's family. She said they brought victim impact statements to the sentencing hearing. The statements were introduced as an exhibit.

On cross-examination, Ms. Haney-Reagan agreed that although the Shelby County documents reflected that bond had been set, they also stated that no bond had been paid. She said she called the district court in Detroit and learned that the Defendant had not been convicted of unlawful possession of a weapon. She agreed the Defendant had no prior criminal convictions.

Michelle Strickland McNeal testified that she was married to the victim and that they had four children. She identified her victim impact statement, which stated that the victim's death caused "turmoil" for her and her children. She said she had nightmares and experienced financial problems after the victim's death. She identified a victim impact statement written by her son and photographs of the victim and their family. She said that the victim was close with his children and that the children experienced behavioral and emotional problems after his death.

On cross-examination, Ms. McNeal testified that she was married to the victim for eleven years. She said the victim was employed at the time of his death. She agreed that the victim was on probation for a drug offense at the time of his death and that he drank alcohol.

Tasha Renee Strickland testified that she was the victim's sister-in-law and the sister of Ms. McNeal. She said the victim was a loving father and a family man. She said the

victim's son began having problems in school and attended counseling after the victim's death.

Eddie Bateman testified that he was the victim's father. He agreed that shortly before the victim's death, they discussed problems the victim was having with the Defendant. On cross-examination, Mr. Bateman agreed that in 1991, the victim shot someone and was convicted of aggravated assault.

Chester Smith testified that he was the Defendant's father. He said that the Defendant was placed in foster care shortly after birth but that he began raising the Defendant when the Defendant was five years old. He said that when the Defendant was a child, the Defendant attended counseling and took medication for attention deficit hyperactivity disorder (ADHD). He said the Defendant graduated from high school. He said that he knew the victim's mother well and that the victim's older brother was the Defendant's cousin. He said the Defendant called him shortly after the shooting and told him that he wanted to turn himself in to the police.

On cross-examination, Mr. Smith testified that he paid the Defendant's $2000 bond after the Defendant was charged with unlawful possession of a weapon in Shelby County. He said that he did not know where the Defendant obtained the weapon and that he never saw the Defendant with a weapon in his home. He said he paid part of the Defendant's bond on DUI and reckless driving charges in Shelby County. He agreed the Defendant was out on bond at the time of the shooting. He agreed the Defendant was arrested before the Defendant could resolve his charges in Shelby County. He said he was not aware of any charges the Defendant faced in Detroit until he received a letter indicating that the Defendant failed to appear in court.

Mr. Smith testified that the Defendant was employed by Kroger at the time of the shooting. He said the Defendant joined the military but was given a general discharge under honorable conditions before the shooting. He said he did not know who owned the gun that was used to shoot the victim. He said he did not see the Defendant use illegal drugs in his home.

The Defendant testified that he took medication for ADHD when he was a child and that he graduated from high school. He said he enlisted in the National Guard in 2006. He said he was discharged for failing a drug test and for missing drills. He agreed that he had charges pending in Shelby County and that he had a disorderly conduct charge pending in Detroit, Michigan.

The Defendant testified that he and the victim had an argument a week before the shooting. He said that the argument escalated and that he hit the victim over the head with a bottle. He said the victim stated that he was a killer and that he would "get" the Defendant. He said he and his girlfriend spent the evening at his cousin's home on the night of the shooting. He said that the victim arrived at the home at 1:00 a.m. and that they began drinking alcohol and arguing. He said they decided they were both "out of line" and resolved their argument. He said that the victim invited him to ride along to buy more liquor but that the victim did not drive to the liquor store. He said that the victim would not let him out of the car and that the victim pulled out a gun. He said that he was able to grab the gun, that the victim grabbed him as he attempted to step out of the car, and that he shot the victim. He said he shot the victim because he felt his life was in danger.

The Defendant testified that after the shooting, he and his girlfriend traveled to Memphis and stayed at a friend's house. He said he called his father and informed him that he was going to turn himself in to the police. He said the police arrested him before he could turn himself in.

On cross-examination, the Defendant testified that he was twenty-two years old. He agreed that was living with his father at the time of the shooting and that he had been having problems with his father and with people in his neighborhood. He agreed he traveled to West Virginia and then to Detroit because he needed to "get away from everybody." He said that he left Tennessee despite knowing he had pending charges in Shelby County but that he returned to face his charges. He agreed one of the charges in Shelby County involved a gun. He said he bought the gun for personal protection and agreed someone had filed off the gun's serial number before he bought it. He denied having a felony firearm charge in Detroit and said the charge was for disorderly conduct.

The Defendant testified that he was not involved with a gang. He agreed he was discharged from the National Guard due to problems with alcohol and illegal drug use. He agreed that he had problems in school when he was a child and that he had been suspended from school more than once.

The Defendant agreed that he and the victim fought a week before the shooting and that he hit the victim in the head with a vodka bottle during the fight. He agreed he was not afraid of the victim. He said that on the night of the shooting, the victim came to his cousin's house and attempted to provoke him. He agreed that he was outside of the car when he shot the victim and that he had possession of the gun. He said he shot the victim because the victim stated that he was a killer and that he was going to "get" the Defendant. He said he was afraid the victim would attempt to hit him with the car. He said that he gave the gun to

his cousin after the shooting and that he told his cousin to get rid of it. He said that he felt remorse for the shooting and that he wished it never happened.

On redirect examination, the Defendant testified that he believed the victim and he had resolved their differences before the shooting. He said he would not have ridden with the victim if he had thought their argument would continue. He said that he asked to leave the car when the victim began "talking crazy" but that the victim would not let him leave. He said that after he grabbed the gun from the victim, he attempted to leave the car. He said that the victim grabbed his jacket to prevent him from leaving and that he shot the victim.

The trial court found that the following enhancement factors applied pursuant to Tennessee Code Annotated section 40-35-114 (2010): (1) the Defendant had a previous history of criminal behavior; (9) the Defendant possessed or employed a firearm during the commission of the offense; and (10) the Defendant had no hesitation about committing a crime when the risk to human life was high. The trial court found no mitigating factors applicable. The Defendant was sentenced as a Range I, standard offender to twenty-three years' confinement. This appeal followed.

In conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

Preliminarily, the State contends that the Defendant has failed to provide an adequate record for review. The State argues that the Defendant has waived consideration of his sentencing issues because he failed to include a transcript of the guilty plea hearing in the record. The Defendant contends that waiver is not automatic and that although he failed to include a transcript of the guilty plea hearing in the record, the present record provides sufficient information regarding the nature of his offense to allow appellate review of his sentence. We agree with the State that the record is inadequate for a proper review.

On appeal, the Defendant was required to prepare a record that conveyed a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal. T.R.A.P. 24(b); State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). The 1989 Sentencing Act, as amended, requires a sentencing court to consider evidence received at the trial. T.C.A. § 40-35-210(b)(1) (2010). With a guilty plea involving a felony,

the evidence supporting the plea and finding of guilt is usually submitted by stipulation. "For those defendants who plead guilty, the guilty plea hearing is the equivalent of trial. . . ." See State v. Keen, 996 S.W.2d 842, 843 (Tenn. Crim. App. 1999). This court considers the guilty plea hearing transcript to be vital to a de novo review and potential resentencing by this court as required by law. See id. at 844; see also T.C.A. §40-35-401 (2010). No matter how developed a record may appear, this court cannot know the full extent unless the guilty plea transcript is included. "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); see also State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

The Defendant contends that although he failed to include a transcript of the guilty plea hearing in the record, the present record provides sufficient information regarding the nature of his offense to allow appellate review of his sentence. The Defendant states that this court has previously elected to review sentencing issues on the merits despite the failure of a defendant to include a transcript of the guilty plea hearing in the record. He cites two cases as examples. See State v. William Michael Clark, No. M2007-00904-CCA-R3-CD, Davidson County (Tenn. Crim. App. Mar. 31, 2008); State v. Sunni Adkins, No. M2007-01355-CCA-R3-CD, Lewis County (Tenn. Crim. App. July 3, 2008) (citing William Michael Clark, slip op. at 5).

We disagree that the record provides sufficient information to allow appellate review of the Defendant's sentence. The trial court stated that it considered the evidence submitted at the guilty plea hearing when it sentenced the Defendant. We recognize that in Sunni Adkins, a majority of the court determined that "sufficient testimony regarding the nature of the Defendant's offenses was adduced at the sentencing hearing to allow this Court to evaluate the propriety of her sentences." Sunni Adkins, slip op. at 7. A concurring opinion by the author of this opinion concluded that the record was insufficient because of the lack of the plea transcript. In any event, unlike the sentencing hearing in Sunni Adkins, during which a police officer testified regarding his investigation and interviews in which victims described the offenses, the Defendant here was the sole witness to testify at the sentencing hearing about the nature of his offense. As noted above, no matter how developed a record may appear, this court cannot know the full extent unless the guilty plea transcript is included. Furthermore, in William Michael Clark, this court concluded that the "failure to include the transcript of the guilty plea hearing in the record precludes this court from conducting a full de novo review of the sentence under Tennessee Code Annotated section 40-35-210(b)." See William Michael Clark, slip op. at 5. This court's subsequent conclusion that the trial court did not err in sentencing the defendant was mere dictum. "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court

is precluded from considering the issue." Ballard, 855 S.W.2d at 560-61 (citing Roberts, 755 S.W.2d at 836); see also State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998) (holding that the defendant's failure to include a trial transcript on appeal waived his challenge to the sentence).

The Defendant's failure to provide this court with a complete record on appeal requires us to presume that the trial court's rulings were supported by sufficient evidence. The Defendant is not entitled to relief.

We note that in the event a defendant fails to provide the court with a complete record on appeal, the defendant should file a motion to supplement the record. See T.R.A.P. 24(e). This court has allowed transcripts of the guilty plea hearing to be added to the record on appeal when the omission of the transcript was raised before our decision. See, e.g., State v. Gary W. Young, No. M2001-02492-CCA-R3-CD, Davidson County (Tenn. Crim. App. Sept. 2, 2003).

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE